JULIETT SLOCUM, PROSECUTOR, v. THE TOWNSHIP OF NEPTUNE.

AMELIA SNYDER, LOUIS FRANKLIN WHITE AND BRITTON R. WHITE v. THE TOWNSHIP OF NEPTUNE.

Argued June 3, 1902—Decided November 10, 1902.

1. The act of March 21st, 1901 (*Pamph. L.,* p. 246), "to provide for the widening of roads and streets in townships," is a general act. It is an empowering, and not merely a regulating, statute.
2. Acquiescence by the owner in a condemnation of property for public use will estop attack by *certiorari,* if there is constitutional and legal foundation for the taking.

On *certiorari.*

Before Justices GARRISON and COLLINS.

For the prosecutors, *Charles E. Cook* and *James D. Carton.*

For the defendant, *Samuel A. Patterson.*

The opinion of the court was delivered by

COLLINS, J.   These writs bring up proceedings taken by the township committee of the township of Neptune, in the county of Monmouth, for the widening of South Main street, in that township, and for the condemnation of the lands of the prosecutors and others sought to be taken therefor.

It is first contended that the widening of the street in question could legally be accomplished only under the General Road act. *Gen. Stat.,* p. 2803.   The proceeding authorized by that act is instituted by individuals in the Courts of Common Pleas of the county, and ignores township lines and authority. It is not exclusive, and is altogether superseded when power over its subject is conferred on a township. *Keyport* v. *Cherry,*

22 *Vroom* 417; *affirmed,* 23 *Id.* 544; *McNeal Pipe Co.* v. *Lippincott,* 28 *Id.* 540.

The legal foundation of the street-widening now challenged is the following statute:

"An act to provide for the widening of roads and streets in townships.

"BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey:*

"1. Whenever the township committee shall determine, by ordinance, to widen any street, road or highway within such township and to take and appropriate for such purpose any lands or real estate, they are hereby authorized to take the same for public use, and to treat with the owner or owners thereof, and make compensation therefor as they may deem reasonable, and thereupon receive from such owner or owners a conveyance of such land and real estate to the township, and such compensation shall constitute a part of the whole amount of costs, damages and expenses to be assessed under and in pursuance of this act, or any act providing for condemnation proceedings by municipalities in this state.

"2. In case said land and real estate cannot be acquired by said committee by agreement with said owner or owners, then in such case the said committee is hereby authorized to proceed to acquire said land and real estate by condemnation proceedings in the manner now provided by law.

"3. This act shall take effect immediately.

"Approved March 21st, 1901." *Pamph. L., p.* 246.

This act is assailed as a special law prohibited by the constitution. Applicable, as it is, to all townships, it is clearly general. *Hermann* v. *Guttenberg,* 34 *Vroom* 616. Its authority for condemnation is questioned as not within its title; but such authority is incidental to the expressed object, and therefore within it. *McLaughlin* v. *Newark,* 28 *Id.* 298; *affirmed,* 29 *Id.* 202, and cases cited; *Johnson* v. *Asbury Park, Id.* 604; *affirmed,* 31 *Id.* 427; *Hickman* v. *State,* 33 *Id.* 499, and cases cited.

Its applicability is denied on the ground that it does not confer power, but merely regulates it when already existing; and that no power to widen streets inheres in the township of Neptune. That township is governed by the General Township act of 1899 (*Pamph. L., p.* 372), by which the only power over streets conferred in express terms is regulative. That act, however, supersedes all special township charters, and if, therefore, the act of 1901 is not construed as a grant of power, it is entirely inefficacious. If possible every legislative act must be given effect by construction; and, aided by the title, to which for this purpose resort may properly be had (*Horner* v. *Webster,* 4 *Vroom* 387, 400; *Evernham* v. *Hulit,* 16 *Id.* 53), we find no difficulty in so construing this one as to confer power on all townships to widen streets by ordinance, that being the form of procedure prescribed in analogous cases by the Township act.

Irregularity in the ordinance is alleged. We do not find this charge sustained; but if we did, would not give it effect, both because of laches in the prosecutors and because of the limitation in the ninety-third section of the Township act of thirty days for the allowance of a *certiorari* to set aside any ordinance for any public improvement. The ordinance in question was passed June 26th, 1901. The earliest writ was issued January 18th, 1902.

The condemnation is challenged because conducted under the general act of 1900 (*Pamph. L., p.* 79), instead of under the Township act. The procedure is substantially the same in both statutes, and that of 1900 is made exclusive in most cases and permissive in every case of condemnation of property for public use.

Some irregularity on the part of the commissioners in condemnation is charged. It is not the judicial custom to consider such a charge if the landowner has an appeal, as we think, reading together the three statutes involved, is the case; but we have, nevertheless, looked into the facts. One of the commissioners, who was sworn and who attended at the examination of the land taken, did not attend the subsequent meetings, although, with his colleagues, he signed the report.

An opportunity for him to act was the only essential. *Condict v. Ramsey,* 36 *Vroom* 503. By the express terms of the law two commissioners could lawfully have made the report. The signature of the third, if unwarranted, did not invalidate it. It is complained that testimony as to land value and damages was taken by the commissioners, though the statute gives no express authority to swear and examine witnesses. Such authority is implied. *Lehigh Valley Railroad Co.* v. *Dover and Rockaway Railroad Co.,* 14 *Id.* 528. We find no legal error in the condemnation proceedings.

Our only difficulty in these cases has been in the incompleteness of the act of 1901. It is fairly arguable that, under the Township act, an appropriation by the voters should have preceded the condemnation. There seems no other way of paying for land taken, and the provision for assessment of benefits is not clear. It would seem, however, that the landowners cannot complain of these defects. Their land cannot be taken, under the legislation involved, until their compensation is paid or tendered; and that awarded the prosecutors was tendered and refused before they applied for their writs. It appears that the Ocean Grove Association, conceding that its lands had derived a benefit from the improvement, made a voluntary contribution in money towards the expense, which was more than sufficient to pay the awards of the prosecutors. The township committee, perhaps irregularly, raised what further funds were needed to pay all awards by a temporary loan. The defects in the act of 1901, if there are such, are of a sort remediable by legislation after proceedings had under it. The defendants refer us to what they say is such legislation. *Pamph. L.* 1902, *p.* 701.

Whatever would have been the *status* of the prosecutors had they promptly attacked the order appointing commissioners, we think that they are now estopped from challenging any of the proceedings. They had notice in advance of the proposed ordinance; they appeared without objection on the appointment of commissioners, and before those officers they contended only for satisfactory compensation. Their first objection of illegality comes after their experiment in that respect

has proved disappointing. The money contributed by the Ocean Grove Association, and more besides, was paid out in awards before Mrs. Slocum applied for her writ. And still further payments were made while the other prosecutors delayed. Their writs were not issued until January 27th, 1902. The contribution by the Ocean Grove Association alone was $5,300, about a third of the whole cost of the improvement. It was not proved, indeed, that the prosecutors had knowledge of such contribution or payment; but, on the other hand, they do not disclaim such knowledge. They knew that money was forthcoming from some source, for they themselves refused payment on January 10th, 1902. They must have known that although the time for filing the report would not expire until January 17th, 1902, it had, in fact, been filed, and that the awards were subject to payment.

Acquiescence, by the owner, in a condemnation of property for public use will estop attack by *certiorari,* if there is a constitutional and legal foundation for the taking. *State, Kiernan, pros., v. Jersey City,* 11 *Vroom* 483.

The writs were allowed without stay; the widening has been physically accomplished by the cutting of buildings and otherwise. We will not disturb a situation that proper diligence would have prevented.

The writs of *certiorari* will be dismissed, with costs.